We'll now move to the next case on the argument calendar, SPB LLLP v. Hoffman Construction Company. SPB LLLP v. Hoffman Construction Company Douglas Ohls, Appellant, Okay, so you heard my questioning of your... Okay, so do you agree, first of all, that the documents that were attached, the A-201 versions that had these arbitration provisions in the general conditions that were actually attached, let's just talk about the first contract, do you agree that that is what the signed contract, when it says the A-201 as modified, that that's what it's referring to? That those physical documents that have those arbitration provisions, do you agree that that's what it's referring to? No, excuse me, no, Your Honor. Okay, that's what I understand. And it's not helpful to the other side to keep pretending like you agree to that. All you agree is that physically it's in there. Okay, so then my question, and this is really important, what is that, where is the document? Can you point to anywhere in the record where the document is that is what you, where your version of the document is that is the A-201 as modified that's referenced in the signed contracts? And I want to just be clear that the first contract you're talking about is what's been referred to as the SBP contract, is that correct, the template? Yeah, the first of the three, yeah. Our position is that there is no separate document that has not been shown that is a modified A-201. It's not some physical document, it's the collection of all the things that you both agreed to during the negotiation process. It's a collection of the signed agreement as modified and the A-201 that would be incorporated as modified. But this is important, I want to nail this down. The A-201 incorporated as modified, your position is that it's not those documents that were attached that have some modifications to them, you would admit, but also include the arbitration provisions. They're not taken out, the 4.6. That's not the A-201 as modified, that's per your position. Your position is that that's not that. Our position is that when the party specifically negotiated standard language that referenced the arbitration agreement out of the signed agreement, a standard public language, that that removed the arbitration from... Even though it wasn't actually removed from the attached agreements, you'd admit that language wasn't actually, like the language was still in there in the attached general conditions. Correct. Okay, so this is important. So what is the... What is A-201 as modified that's referenced in agreements, per your understanding? Per our understanding, it is the document, the signed agreement with the deletion of the specific incorporation of the arbitration provision. Is that it, or is there other changes? And the remaining A-201 doc... Excuse me, A-201 provisions. And where is that, because this is... Where is that physical document at? With respect to the first two, the SBP agreement and the foundation agreement, it's the exhibits that were... But those exhibits actually have the arbitration stuff in them. Like, when you read them, they have it in there. So where is the document that has them taken out? It's taken out of the standard language in the signed agreement, Your Honor. Judge Thomas, you had a question? No, that was my question. I was just going to ask, where is that document? Does it exist, or is it something that's unwritten? If you look at the SBP agreement... I apologize if I cut you off, but the SBP agreement is the template agreement. As put into evidence, it shows the additions and deletions report that is part of the AIA publication, and it shows the parties specifically struck the standard language that incorporates the arbitration provision into the signed agreement. So, counsel, I'm looking at ER-156, the testimony of Mr. McDonald. Your guy, right? Yes. And starting at line 14, the question is, isn't it true that the general conditions as they were incorporated and as they had been negotiated, isn't it true that those final general conditions continued to have clauses in them that called for arbitration of disputes? Yes. This is a reference to the first two contracts. So, with that answer, that these were part of what we signed, I don't understand how, under Idaho law or the common law from which Idaho law derived, that allows you, given that admission, to get to parole. Explain to me how Idaho law or the common law allows you to get to parole given that admission. Well, Your Honor, respectfully, I think that is part of the parole evidence here because if you looked at the signed agreement itself, it says A-201 as modified. And the question is, what does that mean? The signed agreement, what does as modified mean? As modified how? As modified by whom? When? And to find that out, you have to go beyond the written contract to hear what the parties were doing at the time they executed. See, I don't understand that because, to me, at least for the first two, the document with 4.6 and 4.62 was an actual part physically of the contract, that everybody admitted they went together. So given that, I have trouble understanding, even with the convoluted way sometimes AIA contracts work, how you can get past the parole evidence rule. Because, and when you mean together, you mean that they were... Physically. I don't believe there was... Or I thought that that was the testimony for the first two, they went together. Yeah, I think the answer is that they were available at the time. But that's only one part of the incorporation analysis under Idaho law. The second part is that the document incorporated has to be adequately identified. And here, it was the A201 as modified. And looking at the four corners of the signed agreement, that is ambiguous and that's what it is. Here's the problem for your position is, yeah, you're right. It has to be, if you're going to incorporate something as a document under Idaho law, they have to both be adequately identified and readily available for inspection by the parties. You'd agree. They are saying there's this physical document or digital document that was attached. And they have all this testimony saying that's their position. Your position is, no, no, there's something else. Not as I can share what it is, but it's not that document that was attached. And that somehow in that other thing, the arbitration provisions not just in the main contract but also in the incorporated things were stricken. It wasn't actually stricken in the document that's attached, but they were because we simply wanted them to be stricken. The problem with that is how is that fit with Idaho law that says it has to be adequately identified and readily available for inspection by the parties? What do you have that is the A201 as modified that was readily available for inspection by the parties? They have something that was circulated with it, right? You don't have that. Your Honor, I would say the only document that actually shows the final draft being transmitted is exhibit number... Excuse me. It only had the A121 with the red lines. It did not have the A201, and that is... So your position today, I didn't think that you were contesting this, but your position today is that, no, that wasn't really kind of attached, you know, either digitally when it was, you know, that was not attached. Those modified A201 that is in the record for the first two contracts, that was not really attached. No, no. I think that our position is that that was part of the contract and that's what they administered it, but the signed agreement itself that says as modified can mean modifications through the standard language in the written agreement, which should supersede any documents in the A201 incorporated by the order of precedence. But, counsel, Mr. Bowen is also your guy, right? Mark Bowen, correct. And I'm looking at ER203. Wouldn't you agree with me that the copies of the contract that you used to administer all had 4.6? Yes. Yes. And you understood that the general conditions were part of the signed contracts, right? They were attachment to the contract. Now, maybe I'm living, like, in the 17th century, but to me when somebody says, yes, they were an attachment to the contract and they were, at least for the first two, all there, I just have trouble seeing how, absent fraud, you get past that under the parole evidence rule. Well, our position is not based on fraud. It's based on the ambiguity of the phrase. Right. I understand it's not based on fraud, but to me under the parole evidence rule, if something's attached, there is no ambiguity. In this case, I understand what you're saying, Judge, but in this case there were modifications made to standard language in the signed agreement that specifically referenced arbitration, and there is an order of precedence in Section 9.2 of those signed agreements that says the signed agreement controls if there's any conflict. There is a reason why the AIA put that standard language in these published documents. But there's no conflict because the signed agreement, you're correct, has stuff taken out that talks about arbitration, but it doesn't say that things won't be arbitrated. It doesn't specifically say things won't be arbitrated, and then you have the general conditions, as modified, that were attached, and they say things will be arbitrated, so there's no conflict. There is no conflict if you ignore the fact that it was deleted specifically from the published document. No, you don't have to ignore it. You just have to say, okay, let me give you a hypothetical I think would help this. Let's assume a very simple contract, and it has in it two spots that reference the attached Exhibit 1, which actually has the prices for something. You're going to sell widgets, and it's got two spots in the contract that says the prices for the widgets is on Exhibit 1, and Exhibit 1 is attached. And then during negotiations, the parties take out one of the things, which actually says the price for the widgets will be $36 per widget. But in a different provision, it says the price for the widgets will be as indicated in this attachment. You take out the part that says the price of the widgets will be $36, but you leave in the part that references the attachment, and there is an attachment. Would you then say, well, when it says that the price is in the attachment, that's ambiguous, and we've got to resort to the parole evidence rule? I actually think if it would be based on an attachment that was referenced specifically in the document, that would be a different fact pattern than we have here, because here we have a signed agreement that just says A-201 as modified, and that could mean multiple things. It could mean modifications made to the standard incorporation language in the signed agreement, or it could mean revisions made or modifications made to the A-201 itself. With the AIA documents, the A-201 is supposed to cover a number of different agreements that would be signed by the parties, and there's a reason why the AIA specifically puts references in to specific provisions, and that's what the parties deleted here. Let me carry the thing a little bit further, because your point as well is a little ambiguous, but it would be one thing if you had another document out there that said $32 for the widget, right, if you had another document, but you don't have another document. You just say A-201 conditions as modified, and I'd say, well, where's the document that says $32 for the widgets? And you're like, well, it was in the Simplot. I've got some testimony from the Simplot executives saying they had $32 in their head. Well, Your Honor, I think just going through the background will explain why it happened this way. If you look at the arbitration provision was negotiated in February 2009, and that's at ER 73 to 106, and the very first agreement they negotiated did not have the A-201 arbitration language. The arbitration was in the actual signed agreement. And if you follow the negotiations forward that month, when they started bringing the A-201... Let me ask you a follow-up. The A-201 arbitration language is standard language in the A-201 contract, right? It's not like it was put in there by the parties. It's standard language. So when you say it did not have the A-201 arbitration language, I find it hard to believe, like the parties had taken it out of A-201. I know they never took it out. So isn't it more accurate to say it had it in both? When they started negotiations, it was a prior version that addressed arbitration in the signed agreement. And in signed agreement? And then as they went forward, it changed. But did the signed agreement have a reference to A-201 general conditions? It did. And A-201 general conditions provided for arbitration? I'm not sure if that's the case. Yes, they did. The original... I'm talking about the original document. They had all the arbitration wrapped into the actual signed agreement. Then they transitioned to a new publication. And when they did that, they kept negotiating the signed agreement specific reference to arbitration. And frankly, when they transitioned from the Exhibit 101, which is the 1991 version, to Exhibit 103, which would be the 2003 version, they just kept negotiating the provision in the signed agreement and did not address the general conditions. But it was clear based on the e-mails going back and forth that Hoffman understood they were still trying to put arbitration back in by negotiating the signed agreement, Section 9.1.1. Now, there has been some reference in these briefs that somehow Simplot conceded that arbitration was still good because there was an e-mail, from my firm to the Simplot entity, saying that we're good with the proposed revisions of Hoffman. If you look at that e-mail, it's qualified only to revisions proposed by Hoffman. And Hoffman never proposed a revision on any of the arbitration sections of the 8201. The only revisions they proposed were in the signed agreements, Section 9.1.1. They did so several times, and every time Simplot rejected it. And when the final signed agreement came to fruition the following fall, the parties kept that stand-alone mediation-only language in the signed agreements. Once you get past whether there was an error in the ambiguity itself in the signed document as far as what as modified means, it opens up extrinsic evidence. And when you go to extrinsic evidence, you have to consider everything. It can't just be what was there when the parties executed the contract. In short, we think the district court's judgment should be affirmed. The contract was ambiguous on its face, and there are plausible... more than plausible indications  and decided not to arbitrate. Thank you. Thank you, counsel. Your Honors, I think the court has put its finger on most of the problems that exist here. The real error, I think, by the district court is that although the cases we cited, starting at page 19 of our brief, show that when you have an analysis for the parole evidence rule, you start with what's in the written agreement, and then you see if there's an ambiguity,  only to construe the ambiguity. It is not the case that it isn't like you can just find a phrase saying, the contract has been modified, and that that then opens the door for parties to come in and offer their own subjective views of any provision, including ones that are plainly written. That's where the court, I think, went wrong, is because it started not with the written language of the contract, which it largely ignores in its decision. Instead, the district court started with the testimony by Simplot as to what its intent was, and then said, well, if Simplot didn't intend to arbitrate, then there must not have been a meeting of the minds. That's not the correct analysis. This is like first-year law school material. The parole evidence rule is you start with the ambiguity, and then the extrinsic evidence is only used to construe the ambiguity. And this idea that you can create an ambiguity based on something that was deleted during the negotiation phase is expressly rejected by the Idaho Court of Appeals in the Ryan v. Mountain States helicopter case, which we cited. It said, we reject the respondent's circular reasoning that intent should be ascertained from material deleted and that such intent should be compared to the otherwise plain meaning of a contract to determine whether an ambiguity exists. That is right on point, Your Honors. You can't come in after the fact, 10 years into a contract, and say, you know, all this time we've been using this contract that has these general conditions and an arbitration clause in it, but we really never intended to use that. Now that you want to use arbitration, and here's our subjective intent. And even the communications, you know,  But the point is it's the wrong analysis. Thank you. I think we have your argument. I do have one additional... Thank you. I do have one additional question for you. Of course. If hypothetically we were to agree that we should reverse the court, is your conclusion in your brief is a little bit unclear, but is what you are asking us to do to reverse and direct the district court to enter an order staying this case pending the arbitration pursuant to the Federal Arbitration Act? Yes, Your Honor. And secondly, to consider an award of costs and fees to the extent allowed under Idaho law. And thirdly, to authorize... And the costs and fees part, did you ask for that? Is there anything about that in your brief to us? It's actually built into Idaho law, Your Honor. Yeah, but is there any part of that in your brief to us? Honestly, I don't recall. I'd have to go back. The final thing in response to your question is we would also ask that the court authorize the AAA, the American Arbitration Association, to reopen the arbitration, which they were previously directed to close by the district court after its ruling. Thank you. Thank you. We thank counsel for their arguments, and the case just argued is submitted.
judges: BENNETT, VANDYKE, THOMAS